4th case is Pawlak v. Wilson 22-8017 Good morning, your honor. May it please the court, counsel. We're here this morning. Can you please identify yourself for the record? I'm sorry. Philip Abermats, 4th appellant. We're here this morning on the denial of a motion for preliminary injunction in a First Amendment case. And this is a case involving citizen commentary at a school board meeting. The parties are largely in agreement that this is a limited open forum case and that the standard for restrictions on speech in a limited open forum case are that they are permitted if they are reasonable and viewpoint neutral. I can address for a couple of reasons. First of all, the chair at the beginning of the meeting when she opened it for public comment stated that favorable comments by personnel are welcome. We always love to hear those. But negative comments are not permitted. They can only be heard in closed session. But he didn't want to talk about personnel matter. No, that's the interesting part about it. So what does the personnel prohibition have to do with this case then? Because it's the pretext under which his speech was stifled. She said, the is a personnel matter. You can't talk about personnel here. Right. Didn't he say, well, it's not a personnel matter. He said a lot of things. But I didn't say very many things. He they took him out. They did take him out after his three minutes of arguing with the chair were over with. But that comment by the board chair made the policy no longer viewpoint neutral if it ever wasn't viewpoint neutral. Secondly, are we are we here on the on the abusive or offensive language part of this? Yes, we are, Your Honor. Why is that? Because that policy could just as well have been used on my client pretextually. It wasn't. The challenge here was under the personnel topic. That's correct. That's correct. Yeah. So why would your client have standing to challenge the offensive language piece? Because these are policies that are susceptible of ad hoc determination and use. And he was already hauled out of the meeting by the cops the first time on the personnel exception. We have to allege more than a speculative injury. You have to show a concrete imminent injury to get standing under our cases. And I I think nobody disagrees that he satisfied standing for the personnel policy. But I don't see any imminent injury under the offensive conduct portion. Well, I guess I would ask, you know, does he have to go on back and speak again and be rolled out of order that his language was offensive and then we can come back here again? I don't know the answer. Well, he wasn't removed for offensive language, was he? No, Your Honor, he was not. And he isn't alleging that he plans to use offensive language in the future, does he? No, he's not. So can I just ask, coming back to the question that Judge Kelly posed about, you know, is this the signup sheet itself said due to ongoing litigation, we will not hear audience comments on mask mandates, vaccinations or comments regarding whether or not the district is following the Constitution. Thank you for your understanding. Why isn't that enough to resolve the case? Wasn't he trying to talk about mask mandates? Wasn't that the topic that he was not supposed to talk about that because there's pending litigation? Well, that's the issue in Mesa v. White, where the issue is when a matter cannot be discussed by the board in an open meeting, perhaps because you say of litigation. That doesn't mean that the board can't hear a public comment on it. They don't have to respond to it, react to it, or anything of the kind. They can discuss it in private. But it's a restriction on content of which really is not either reasonable or viewpoint neutral. It's not viewpoint neutral because this was a topic of considerable controversy and people were energized about the fact that people who go to school board meetings just speak out, generally speak out when they are, when they want to say something negative about something, not something positive. So, in effect, it really isn't viewpoint neutral, although it's facially viewpoint neutral. So, why doesn't Mesa v. White control this case? Well, why doesn't it? Yeah, why doesn't it? I think it does. You can say that right up front. Mesa v. White says that forbidding the discussion of personnel matters at a public meeting was not even a significant governmental reason for banning it. So, that gets into the issue of reasonableness. And we don't think this is reasonable because this is an issue that is very germane to what a school board does. And it's something that the public wanted to hear about, wanted to talk about. The only reason that you could say, well, we're not going to talk about personnel if, in fact, we are really dealing with the personnel here. All he did was mention the superintendent's name and that was enough to get the personnel exception used on him. The, as I said, the people wanted to hear about that and talk about that. And if it's truly personnel, then you could say, well, maybe there's a privacy interest involved. But the courts that I cite in my brief say that the First Amendment free speech right, even in a limited open forum, trumps that. So, again, I don't think we have reasonableness. I don't think we have viewpoint neutrality. And I don't think we can meet the standard here. In other words, I don't think the school board can meet the standard here of Minnesota Voters Alliance v. Maskey, the 2018 case from the Supreme Court that requires reasonableness and viewpoint neutrality. I'd like to reserve the rest of my time for rebuttal. Good night, counsel. You may. May it please the court. Kendall Hoops, Sheridan, Wyoming. I represent Sheridan County School District No. 2 and its Board of Trustees. I appreciate the opportunity to address you today. The school district's insistence that Mr. Pollack follow its rules with respect to public comment did not infringe on his free speech rights. Well, if they have a public comment period, what's the point of shutting him down simply because the name of a school personnel was involved? Sure. Let me address that in... But that's not what... He didn't want to talk about personnel matters. So, yeah, let me break that down. Good question. So, first, a legal response. Then, second, I want to give a very practical response. So, from a legal standpoint, in a school board meeting, which is a limited public forum, courts are clear that reasonable restrictions and viewpoint restrictions are admissible. From a practical standpoint, and I believe that's what your question gets to, is if he did not want to talk about personnel, all he had to have done was said so. He did say so. And he was given multiple opportunities... And he was shut down regardless. Your Honor, he was given multiple opportunities to talk about something else if he wanted to, and he chose not to. He was given opportunities by the board chair. Later on in the discussion... Well, he wanted to talk about something that had been said at the last board meeting, not about personnel, and they would not let him do it. That's what the complaint said, and that's how I looked at it. Well, the complaint alleges, and the briefing is clear, that he's challenging the policy with respect to the restriction on personnel. Right. And that is why it was stopped. There's not a dispute that he was stopped for another reason. Well, would you concede, then, that if the person indicates it's not a personnel matter, that when the forum is open for public comment, that he should have been permitted to speak uninterrupted for the three minutes? Yes, and he was given that opportunity. He chose not to. Judge, the important part of that factual inquiry, and the facts really aren't in dispute here, is that as soon as the board chair said, you're speaking about personnel, that's not permitted. He did not say, no, I'm not speaking about personnel. I want to give another. He didn't do that. He immediately began to argue with the judge, and take advantage of what he perceived to be a misstatement, or something that the chairman said wrong, to present an argument that he wanted to make. And he's still making it today, regardless of the fact that he didn't even want to talk about personnel. That is the problem with his argument. But we don't have a transcript of his statement, do we? That's correct. All we have is what's alleged in the complaint. That's correct. He is alleged, there's a video, but that's not in the record. But, your honor, you have the affidavit from the superintendent who was there, and you have the declaration from Mr. Pollack, and they're really not in conflict. He admits, if you look in his declaration, that he was given the opportunity to talk about other things if he wanted to. And, importantly, he was told, if you want to talk about personnel, later on in our agenda, there is an executive session where we talk about personnel, and you can do so then. He didn't want to do that either. Well, doesn't the Mesa v. White case cover this? Yeah, I'm glad you asked. Doesn't it say that they can't stop them completely? So, certainly that Mesa case is important today. And you asked the appellant's counsel, and I'm glad you asked me. Significant differences between the meeting and the Mesa v. White case, which was a county commissioner meeting, and the meeting that the school board has had. And I want to go through those differences. First of all, the county commissioner meeting was a designated public meeting. A heightened standard applied, meaning that the entity, the county, needed to show there was a significant interest and that their restrictions were narrowly drawn to achieve that interest. We don't have that here. The school district's policy, BEDH, says this is not an open forum. And an appellant concedes that it's not an open forum. Second big difference. Well, why would they say then, it's okay to talk about good things, but you can't talk about any bad things? Sure, let me answer that question, and I am going to come back to Mesa v. White. So he alleges that the board chair said something to the effect of, you can't talk about personnel unless it's good. We like that. Judge Johnson, the district court held, and he called it a cheeky comment, but basically he was saying an offhanded comment can't change a facially viewpoint neutral policy into a policy that's not viewpoint neutral. And that's important here because, to the extent the appellant argues that the board had, the chair herself, had policymaking or decision-making authority, she did not. Wyoming law is very clear. The board has authority to create policy, and you have to have a majority act of the board. More importantly, he doesn't even claim he wanted to make negative comments or that he was stopped from making negative comments. It's really outside of what his argument is. So to the extent that comment was made, and that's fine if the court views that from his declaration as being made, it didn't change the policy and doesn't entitle him to the injunction that he's asking for. Well, counsel, is it your view that he is challenging the policy, and I take it this is no comment on personnel matters policy, on its face or as applied? Yes, on its face. I believe the appellant concedes it's not as applied because he wasn't stopped because he was, quote, making a negative comment. So yes, on its face. And that's what the briefing and that's what our discussions in front of the lower court and presented to you are, facially. I mean, it seems though that the favorable comment statement that was made at the meeting could be viewed as not so much amending the policy as it is, well, I'm gonna apply the policy in a way that allows for favorable comments, but not for unfavorable comments. And then the whole thing just becomes artificial because, as we've said a number of times, already this morning, this just didn't seem to be comment on a personnel matter to begin with. I understand someone could view that comment and make an as applied challenge, but you're right, that's not what happened. And that's not seriously being argued here by the appellant that as applied, he was stopped from making a negative comment. In fact, he says, I didn't even wanna make a comment about personnel. So let me just, to sum up, even though it doesn't appear he was making a comment on a personnel matter, he referred to the superintendent, but that was about it. He's nonetheless challenging the personnel policy on its face. Is that your understanding of the claim? It is. I believe he's saying the board chair thought he was gonna speak about personnel and stopped him for that reason and now is making a challenge on its face that school district just can't have that limitation. And that's the essence of the briefing is that they can. That's a viewpoint neutral, that's a reasonable restriction against public comment for the reasons that are set forth. The school district does not wanna turn that public comment period into a forum where- Into a public comment period. Well, they don't wanna turn it into, they do have restrictions on it so that it doesn't turn into a forum on personnel. And they're upfront about it. And that brings me to a very critical difference in the Mesa case. The county commissioners in that case did not have any written policies that were announced beforehand stating that you can't talk about personnel. In fact, in prior county commissioner meetings, they had talked about personnel with no indication that it was out of bounds. In this situation, the school district's upfront about it. It's written directly in its policy. It's made available to everybody who's there. This is just not a topic we're gonna have at this time in the meeting. It does have an alternative channel for that type of discussion to be had. And the cases that we cite reference, that's important. If you're looking at the reasonableness, if you're looking at whether it's viewpoint neutral, if you're looking at whether it's an appropriate restriction, is there an alternative channel? And there was. And still is. You mean the executive session? Yeah, they can go into executive session and discuss personnel, which is where the school district policies direct that to happen. They don't want persons advocating for termination or for hiring. They don't want personnel, personal information, confidential information. Those are reasonable reasons for a school district. Why does he have standing to challenge the personnel policy if he had no intention of commenting on personnel matters? You ask a good question. The element of standing is kind of bothersome from the outset of this case on both issues. And they dovetail with the standard for a preliminary injunction. You have to show injury, threat of irreparable injury similar to the Article III injury you need for standing. I would answer that question this way. I don't want to ascribe improper motives, but I believe it's clear when you look at what happened that night, Mr. Pauly, and you've seen in the file, there was a lot going on that he was disagreeable with. He took what he thought was an opportunity to attack. But your client did evoke the personnel policy at least at the beginning. And I just can't even see why he was not permitted his three minutes of comment on masks or vaccinations or whatever he wanted. And we wouldn't be here. And, you know, unless you were going to, despite what Mr. Abermatt said, you know, maybe he was being shut down because of abusive or offensive comment. Well, it's fair to say the board chair stopped him. And they called the police, right? I'm sorry? They stopped him. They adjourned. They called the police. Well, okay. Before they adjourned and before they called the police, multiple times he was told, go ahead and talk on something else. He wouldn't. He continued the argument on this restriction, the personnel restriction. So to the extent... I don't, I still don't understand what we're talking about by personnel restriction, man. All he did was invoke the superintendent's name. And that's pretty much how you're going to start any public comment. I think Superintendent Stoltz is wrong for the following reasons on this policy, ABC. And that's not a personnel matter. How did we get into personnel if you wanted to talk about policy? Well, if you're saying the board chair was wrong, maybe. But they corrected it right then. If you want to talk on something else, do. And he didn't want to. What did he want to talk about? Well, at the time, nobody knew. In his declaration, he's now set forth, he wanted to talk about the mask mandate, the constitutionality, but they didn't know it. Why shouldn't we credit that? Shouldn't we credit that in his declaration? Well, I think it hurts him. If he was really making a facial challenge to the personnel restriction, then his declaration would say, I want to talk about Superintendent Stoltz. And he'd challenge it, but he doesn't. He says, I didn't even want to talk about personnel. So I think it hurts his argument. I'm fine with that. I just want to know what he wanted to talk about and why he was not permitted to talk about something other than personnel and do it in a polite fashion. When he was given the opportunity, if he would have just given that, we would have a much different situation. But he didn't want to. So what exactly did he say after the chair said, or interrupted him and said that he was speaking on a personnel matter? What was his response? He immediately challenged her right to stop him and then immediately demanded to know what policy and what authority she had to stop him. And the argument went from there. It didn't go to any, he didn't try to make other comment. She had no basis for that comment in the first place. Well, I don't think that's there. He did raise the superintendent and she said, you can't talk about personnel. And if he didn't want to, he just says, I'm not going to. Here's what I want to talk about. But if the superintendent had made decisions about COVID restrictions and he started off by referencing the superintendent, how by any stretch could that be a personnel matter? I mean, was there any issue about taking personnel action against the superintendent? Well, we don't have the transcript. And to answer that question, it's not in the record. But the answer is, certainly a board chair could perceive that this was going to be a personal attack on the superintendent and an advocate for him to be discharged. Now, it didn't turn out to be that way because he didn't continue on that vein. In fact, he doesn't say he even wanted to do that now. But it was reasonable. My time's up, Your Honor. Just to finish it up on there. Is there any forum where he could have stood up and demanded that the superintendent or the board or anybody be discharged because of their COVID policy? He could have came to the next part of the agenda, the executive session, and talked to the board about his concerns about the superintendent. Is there any forum where he could have done that in public? He could not discuss personnel in public. He could have discussed other topics. Does that answer your question? Well, sort of. But your position is that a member of the public cannot comment on the performance of elected officials at a meeting. Appointed employees. Okay, appointed. That just seems wrong. Well, that's a critical difference. Elected officials. How does that even meet a rational basis? Well, there's quite a bit of case law that says that's reasonable. An elected official, different. You take more. But employees don't have to have their confidential information or their evaluations lobbied about in a public comment period. There's quite a bit of case law to that effect. Who's the elected official that he could have made his case to that supervised these appointees? The board. It's the state. They're the county school board. Yeah, the board. That's an elected. The board are elected. That's an elected. Yes. Thank you, Your Honor. Any other questions? Okay, we had some at the bottom. Just a couple of points, Your Honors. I won't take long. This canard that he could have addressed the board and closed executive session. The law does recognize that. Yes, there can be alternative means for conveying the information. That's part of this jurisprudence. But we have found no case. Certainly, Apple Apple has found no case indicating that you can address a public concern in a non-public meeting, and that satisfies the First Amendment. So I think that's a red herring. Was he intending to discuss the personnel matter? We've been kind of chasing around like an elemental fact here. To the best of my knowledge, Your Honor, and from all we have in the record, he was not. He wanted to talk about COVID policy, right? I believe so. So why does he have standing to challenge the personnel policy? Because it was the imminent injury to him under the personnel policy. Yeah, that's not why he was there. That was the basis on which he was shut down, isn't it? It is the basis on which he was shut down. But you're challenging the policy as violative of the First Amendment as opposed to saying the policy was used as a pretext to shut down public concern speech. Well, I think in my brief, I said that too. I'll admit the point is not clearly delineated in either of the briefs. Well, is it a facial challenge or isn't it to the personnel to the personnel? The case was never briefed by either side as either a facial or as applied to challenge. This is just coming up an oral argument. I'd have to say on behalf of my client that that is facial and as applied. The other thing is the authority of the board chair to change the policy. My opponent maintains that she didn't have the authority to do that. They really don't cite anything as authority for that. That's a part of the record. You cite anything as authority that she can? No, but my argument is that what really matters is not the legal authority, but how the public would perceive the statement. In other words, to borrow a concept from agency law that perhaps she had apparent authority to modify the policy. That's my answer on that. And if the court has no more questions, I'll yield my time. Thank you, counsel. We appreciate the arguments. You're excused and the case shall be submitted.